IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN ANTHONY MORRIS,

    Petitioner,                   No. CIV-S-10-2623 GEB CKD P

    vs.

WALKER,                               <u>ORDER AND</u>

    Respondent.                <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254. He challenges convictions entered in 2006 for four counts of first degree robbery. He presents two claims.

I. <u>Background</u>

        On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> On April 24, 2006, Canh Van Le, age 78; his 72-year-old wife Nhan Dang; their 32-year-old son Huyen Le; and their 20-year-old granddaughter (Huyen's niece) Truc Anh Le lived together in a South Sacramento residence. The doorbell rang after 1:00 p.m. and Nhan answered to find a young Black man asking her questions. She did not speak English, so Nhan asked her granddaughter Truc for help.

/////

1

Truc, who understood only a little English, went upstairs to get her English-speaking Uncle Huyen, but noticed she was being followed by a man with a gun.  Two Black men and one Hispanic man had pushed the door open and entered the house.  The victims described one of the Black robbers as short and thin while the other as big and tall.  In a field identification, Truc and Huyen identified [Titante] Scott as the large Black robber and [Roosevelt] Heng as the Hispanic robber. [Kevin] Morris is five feet five inches tall and weighed 132 pounds while Scott is five feet ten inches tall and weighed 235 pounds.  While neither Truc nor Huyen could identify Morris in a field identification, at trial all four of the victims identified the defendants [Heng, Morris and Scott] as the robbers.

Truc knocked on the door of Huyen's upstairs bedroom and told him robbers were in the house.  Huyen opened the door to let her enter and call 911.  He closed the door, but Morris and Scott broke the door down and entered the room.  Scott and Morris, both armed, told Truc to put the phone down.  Scott eventually left the room to check the rest of the upstairs.

Morris remained in the room and pointed a gun at Huyen's head.  Canh entered and threw himself on Huyen to keep his son from being shot.  Huyen, Canh, and Truc were taken downstairs to join Nhan.

All four victims were tied up and made to lie face down next to each other.  Heng took a pistol from Morris and questioned Huyen about whether there was any money in the house.  When Huyen replied they had no money Heng said, "You Asian punk, you know we hear – somebody told us you have the money.  That's why – what we come here for.  And if you don't tell me the money, I'm gonna kill your dad, your mom and I gonna rape your niece.  Is that what you want?"  (*Sic.*)

Huyen pleaded with Heng.  Heng asked Huyen who owned the car parked in front of the house.  Huyen lied, telling Heng it was his brother's car, and that he had no wallet having left it in his car.  Heng hit Huyen in the head three times with the gun, asking him where the money was between strikes.  Heng then did the same to Huyen's elderly parents, repeatedly striking them in the head with his gun.  Each time asking Huyen to look at the firearm before he struck them.

Heng told Huyen he was going to rape Truc "right now" and took off his shirt.  He chambered a bullet form the magazine by pulling the slide back, put the gun to Truc's head, telling her, "Do you feel it?" and then slowly moved the weapon down her back and to her buttocks.

Fortunately, the robbers had left their stolen SUV running in front of the house.  Sacramento police officers were dispatched to the

>home to investigate the suspicious vehicle.  Before Heng could do anything more to Truc, one of the other robbers exclaimed from upstairs "Hey, there are cops outside.  There are police outside," which caused all of the robbers to run out of the house.
>
>Heng was apprehended by the police officers as he tried to leave through the back door.  Morris and Scott fled by jumping to the roof of the house next door before going back to the ground, where they were chased by police on foot and separately caught.
>
>The robbers took credit cards and $1,500 in cash belonging to Canh and Nhan.  Cahn kept these in a suitcase reserved for special documents hidden in his bedroom closet.  The money was for the rent on the family's house.
>
>Officers found a nine-millimeter Baretta semiautomatic handgun and a BB gun at the residence.  Cash in the amount of $950 was found on Scott.  The stolen credit cards were found on Morris.  The money was folded in $100 increments, just as Canh does.

People v. Heng, No. C054315, 2008 WL 2721718, at *1-2 (Cal. Ct. App. July 14, 2008).

II.  Standard For Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

/////

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

"[W]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

As long as "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded. Harrington, 131 S. Ct. 786.

If the state court does not reach the merits of a particular claim, as is the case here, de novo review applies. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).[2]

III. In-Court Identification

As indicated above, the victims of the April 24, 2006 robbery could not identify petitioner as being involved in the robbery at "show ups"[3] occurring shortly after the robbery. However, at trial, all four victims identified petitioner as being involved. While it is not entirely clear, it appears petitioner believes his Constitutional rights were violated when the victims were allowed to identify petitioner as being involved in the robbery at trial because, according to petitioner, their identification was based on their viewing petitioner at an overly suggestive "show up." In other words, petitioner believes the victims only identified him as being involved in the robbery at trial because they remembered his face from the "show up" and that is not permissible under the Constitution.

The Due Process Clause of the Fourteenth Amendment does bar admission of unreliable identifications that were obtained by unduly suggestive identification procedures. See Moore v. Illinois, 434 U.S. 220, 227 (1977). The problem here is that petitioner fails to point to anything indicating his being identified as a participant in the April 24, 2006 robbery at trial had anything to do with the "show ups" occurring shortly after the robbery, especially since none of the victims positively identified petitioner as being involved at the "show ups." Furthermore, "show-ups" are not per se impermissibly suggestive. U.S. v. Kessler, 692 F.2d 584, 586 (9th Cir. 1982). Generally speaking, evidence regarding the correctness of an eyewitness identification is

---

[2] Petitioner's claims were raised on collateral review and were rejected on procedural grounds.

[3] A "show up" is when a person suspected of committing a crime is presented by himself by police to the victims, or a witness, shortly after being arrested for possible identification as being one of the perpetrators of the crime.

for the jury to weigh.  Id. at 587.  There does not appear to be a need to depart from that general principle here.

Even if the court were to find that allowing the four victims of the April 24, 2006 robbery to identify petitioner as one of the robbers was Constitutional error, habeas relief still cannot be granted unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). As indicated above, petitioner was found running from the scene of the robbery and, when he was arrested, he had the victims' credit cards in his possession. RT 139-146. Considering these facts, and that the victims' in court identification of petitioner was significantly impeached, the court cannot find that the victims' identification of petitioner as being involved in the April 24, 2006 robbery had any significant impact on the jury's verdict.

For all of these reasons, petitioner's first claim must be rejected.[4]

IV.  Ineffective Assistance of Counsel

In his second claim, petitioner asserts his trial counsel was "ineffective" in violation of the Sixth Amendment by failing to move to exclude the in-court identifications of the four victims and for failing to file a motion after trial arguing that the in-court identifications resulted in a denial of petitioner's Constitutional rights requiring a new trial.  In order to demonstrate ineffective assistance of counsel, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984).  To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690.  The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.

---

[4] The court notes that respondent argues that petitioner's first claim is "procedurally defaulted."  In light of the foregoing, the court need not address this argument. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (district court may reach the merits of a habeas petitioner's claim even if procedural default is asserted).

6

Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

As indicated above, petitioner has failed to show that failure to exclude the victims' in-court identifications was error under federal law, nor has he shown it was error under state law.  Because petitioner fails to point to any valid basis for exclusion, he has not shown that counsel's failure to move for exclusion was objectively unreasonable.  Furthermore, even had the identifications been excluded it is not likely that the outcome of petitioner's trial would have been any different considering the other evidence of guilt.  For these reasons, petitioner's ineffective assistance of trial claim must be rejected.

Petitioner also claims counsel on direct appeal was ineffective for failing to raise claim one.  Since claim one has no merit, appellate counsel had no obligation under the Sixth Amendment to raise it.  See U.S. v. Moore, 921 F.2d 207, 210-11 (9th Cir. 1990) (no prejudice under Strickland where appellate counsel fails to raise meritless claim).

V.  Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.  The court notes that in his petition, and in his traverse, petitioner requests that the court hold an evidentiary hearing.  Because petitioner fails to point to any valid reason to have an evidentiary hearing, that request will be denied.

Accordingly, IT IS HEREBY ORDERED that petitioner's request that the court hold an evidentiary hearing is denied; and

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 9, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
morr2623.157